ROBERT K. PHILLIPS, ESQ.
Nevada Bar No. 11441
TIMOTHY D. KUHLS, ESQ.
Nevada Bar No. 13362
**PHILLIPS, SPALLAS & ANGSTADT LLC**
504 South Ninth Street
Las Vegas, Nevada 89101
(702) 938-1510
(702) 938-1511 (Fax)
rphillips@psalaw.net
tkuhls@psalaw.net

*Attorneys for Defendant*
*Sam's West, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DONNA CARLSON,<br><br>                    Plaintiff,<br><br>v.<br><br>SAM'S WEST, INC.; a foreign corporation doing business as SAM'S CLUB, and also doing business as SAM'S CLUB #6382; DOES I through X, inclusive,<br><br>                    Defendants. | Case No: 2:17-cv-02882-MMD-EJY<br><br>**DEFENDANT SAM'S WEST, INC.'S MOTION TO EXCLUDE PLAINTIFF'S DESIGNATED "SAFETY EXPERT" JOHN R. PETERSON** |

COMES NOW, Defendant SAM'S WEST, INC. ("Defendant" or "SAM'S WEST"), by and through its counsel of record, the law firm of PHILLIPS, SPALLAS & ANGSTADT, LLC, and hereby moves this Court for an Order excluding Plaintiff, Plaintiff's counsel and Plaintiff's witnesses testifying on her behalf from discussing, posing questions regarding, introducing evidence regarding, or in any manner suggesting to the jury any matters regarding Plaintiff's retained expert John Peterson.

## I.    INTRODUCTION

On October, 28, 2015, Plaintiff, Donna Carlson ("Plaintiff"), alleges that she was struck from behind by a row of shopping carts while standing in the vestibule area of Sam's Club No. 6382. Specifically, she claims that she was struck by said carts while they were under control of Sam's Club employee, Tommy Tu ("Tu"). In short, Plaintiff now claims that she suffered grave and severe injuries

1    to her lower back and right side as a result of the subject incident.

2         As the United States Supreme Court held in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

3    this Court is the gatekeeper of expert opinion and must exclude any expert opinions which are based

4    upon mere possibility, speculation, or surmise. 509 U.S. 579, 589-90, 113 S. Ct. 2786, 2795 (1993).

5    On June 14, 2018, Plaintiff disclosed John R. Peterson of Retail Litigation Consultants LLC as a

6    retained expert pursuant to FRCP 26(a)(2)(A). *See* Plaintiff's Initial Expert Disclosure Statement,

7    attached as Exhibit "A;" *See also* John R. Peterson's Written Expert Report, attached as Exhibit "B;"

8    *See also* John R. Peterson's Curriculum Vitae, attached as Exhibit "C."

9         Mr. Peterson does not meet any of the requirements for a testifying expert under *Daubert* and

10    FRE 702. As admitted by Mr. Peterson in his deposition, not only has he <u>never been qualified as an</u>

11    <u>expert</u> by this court, <u>he has been routinely disqualified by this Court and Nevada's Eighth Judicial</u>

12    <u>District Court on multiple prior occasions</u>. Mr. Peterson is woefully unqualified to offer expert

13    testimony, fails every standard under *Daubert* and, because his testimony is not the product of any

14    reliable methodology, it will not assist the trier of fact in understanding the evidence or determining a

15    fact at issue. Further, in coming to his final opinions, he never once spoke with Plaintiff at any point

16    during the litigation process; he never visited the incident site in question. *See* Deposition Transcript

17    of John R. Peterson, attached as Exhibit "D" at 12:1-21. Instead of cite to industry standards, Mr.

18    Peterson's "expert" testimony relies on mere conjecture and lay person observations, of which he is

19    not qualified to testify towards. Accordingly, Mr. Peterson should be excluded as a witness from trial.

20    **II.**       **STATEMENT OF FACTS**

21         **A.**    <u>**Case Background**</u>

22         This matter stems from alleged injuries which Plaintiff allegedly sustained in October of 2015

23    when she was struck from behind by a row of shopping carts in the vestibule area of Sam's Club No.

24    6382.

25         The issues in this case are not complex and include: (1) whether SAM'S WEST Associate Tu

26    was negligent in allowing a shopping cart to "tap" Plaintiff from behind at a low rate of speed; (2) if

27    so, whether SAM'S WEST is vicariously liable for said negligence; (3) whether Plaintiff was

28    contributorily negligent; and (4) what damages Plaintiff suffered as a result of that negligence. *See*

Deposition Transcript of Tommy Tu, attached as Exhibit "E." Plaintiff seeks to qualify Peterson as an expert and to have him testify concerning whether SAM'S WEST personnel deviated from the standard of care in relation to Plaintiff's incident. However, Peterson does not meet the standard to qualify as an expert. His report is admittedly not based on any industry standard of care, but merely on Peterson's personal opinions regarding what he thinks a standard of care should be, without reference to any objective standard. <u>He has not articulated any objective industry standard of care violated by SAM'S WEST</u>. Under these circumstances, he cannot be qualified as an expert, and his testimony would serve only to confuse the jury.

Mr. Peterson's report is devoid of any reasonable or reliable scientific or otherwise informed methodology, and it is unrelated to the reason for Mr. Peterson's retention as an "expert."  Mr. Peterson's alleged opinions are as follows:

**Opinion #1**
The incident was preventable through a proper adhesion to the industry's known and accepted method, "the use of spotters".

**Opinion #2**
There was a systemic failure to recognize the risks involved with using one employee to operate and control an entire row of shopping carts without engineering control or assistance from another employee.

**Opinion #3**
The Defendant was aware of the risks through disclosed trends and date showing them collisions were a probable risk to customers entering the store at or near the area of cart replenishment.

**Opinion #4**
The Defendant did not conform or adhere to adopted industry standards regarding customer safety when replenishment activities were taking place. This resulting in an injury incident.

*See* Exhibit "B," at 16.

Peterson's "expert" opinions, which are so blatantly factual in nature, do not depend on any type of specialized knowledge, and are not necessary to present to the jury to understand the issues in this matter. It is unnecessary for Mr. Peterson to present his mere speculations to the jury as a "hired mouthpiece," without any actual knowledge beyond what he learned by working as a loss prevention

specialist or by monitoring kiosks at airports. *See* Exhibit "D," at 75-80. Mr. Peterson's report is fatally flawed and his opinions are certainly not "expert" or based on any type of specialized knowledge.

        **1.**      ***Mr. Peterson Fails to Describe Adequate Policies and Procedures, Industry Standards or Offer "Expert" Opinions Regarding Same.***

Mr. Peterson alleges in his report that "standing principle taught within the service industry is that customer and employee safety is a top priority." Exhibit "B," at 2. For reasons unknown, Peterson makes clear for the jury "Defendant has denied financial responsibility for the claim being made," although it "admits the Plaintiff was struck by the shopping carts." *Id.* at 6. However, he takes issue with the fact Defendant allegedly believes "the management and collection of shopping carts is a one-person job." *Id.* at 6.

With that established, Peterson opines "there was a systemic failure to recognize the risks involved with using one employee to operate and control an entire row of shopping carts without engineering control or assistance from another employee." Exhibit "B," at 16. He even goes as far as to opine "Defendant did not conform or adhere to adopted industry standards regarding customer safety when replenishment activities are taking place. This resulting in an injury incident." *Id.*

As to what "system" Mr. Peterson believes "failed," whether it is a verbally communicated "system" or an actual, tangible and physically manipulated "system," is unclear. Further, there is no citation to any "industry standard" which Peterson turns to that governs the handling of shopping carts by retail operators in Nevada, let alone any code related to the same. Regardless of the type of "system" or "standard" Mr. Peterson had in mind when he authored his report, the basis for this opinion is fluff.

Looking at the portions of Mr. Peterson's report to which he refers to the "industry," namely paragraph D of Section II, he does not speak of anything of substance, but refers generally to the "Safety and Health for Engineers Book," which per its own description on goodreads.com, is drafted for engineers and engineering designers to follow OSHA guidelines. *See* Goodreads.com Excerpt, attached as Exhibit "F." The book, in no way, applies to SAM'S WEST'S handling of shopping carts in a vestibule. Other than a reference to this engineering book, Mr. Peterson ***points solely to Sam's***

1   ___**Club's own policies**___ and the vague, and never explained, "industry standard of care" upon which he

2   bases his opinions. Exhibit "B," at 8-10.

3          Going with that, the materials Mr. Peterson reviewed to form his "opinions" included SAM'S

4   WEST's incident report and accompanying documents, secondhand accounts of the alleged incident

5   from individuals who did not actually witness the alleged incident, videos produced by SAM'S WEST

6   and SAM'S WEST's responses to various sets of written discovery. In other words, the only materials

7   Peterson reviewed to form his opinions was the very same evidence which will be presented to a jury.

8   Mr. Peterson ___did not visit the subject Club___; he ___did not look at a layout of the vestibule where___

9   ___Plaintiff's incident occurred___; and he ___did not speak with Plaintiff or anyone related to this incident at___

10  ___any point in time, whether that be before or after her incident occurred___.

11       Q.    So have you talked to Mrs. Carlson at all?

12       A.    No.

     Q.    Is that – I mean, in terms of time frame, have you talked to her at

13               any point during the litigation process?

14       A.    **No.**

     Q.    So you've never talked to her on the phone or had any in-person interview to

15               kind of sit down with her and talk to her about her case?

     A.    No. I just read her deposition [after rendering his final opinions.]

16       Q.    Okay. And have you had any conversations with any of her treating providers,

             anybody related or disclosed in this case?

17                      *See* Exhibit "D," at 12:2-21 (emphases added).

18

19         **2.**    ***Mr. Peterson Possesses No Scientific, Technical or Specialized Knowledge to***
           ***Qualify Him as an Expert.***

20         Mr. Peterson admittingly has only a high school diploma in terms of formal education. Exhibit

21  "B," at 71:19-25. Instead of relying on his formal education to serve as the basis for his opinions, Mr.

22  Peterson instead relies on his certifications in "loss prevention"[1] and his experience working at Wal-

23  Mart Stores, Inc., SAM'S WEST's parent entity, almost a decade and a half ago. *See* Exhibit "D," at

24  65:12-25, 66-68. He also points to his employment at HMS Host, where in 2018 he was "in charge of

25  _____

26  [1] Per Peterson's own testimony, "loss prevention" encompasses "compliance and shoplifters and

27  dishonesty, shrink, crisis management." Exhibit "D," at 66:23-25.

28

loss prevention" whereby he "operat[ed] businesses within travel plazas in airports. . . . we operate all the little – there's different airports in different places you can go. So if you see a newsstand or a store or a concession stand or a bar, or a Starbucks is probably the most popular thing that people associate with us, then that's probably our operation." Exhibit "D," at 75:23-25, 76:1-8. With respect to his knowledge of how the "industry" governs the handling and operation of shopping carts in a retail setting, Mr. Peterson boasts of his experience with the Wal-Mart Stores, Inc. brand of companies. The only issue with Mr. Peterson's knowledge is that his past experience in loss prevention never once touched on any handling of shopping carts or formation of safety policy with respect to the handling of shopping carts:

> Q.      And I believe you started your employment at Wal-Mart in 1992?
> A.      Something like that, yes.
>                                     . . .
> Q.      Okay. So I take it that that was around 2003 that you made a transition to a risk coordinator?
> A.      2002, 2003, something like that, yes.
> Q.      And shortly after, you became a market asset protection manager?
> A.      Yes.
> Q.      And then you said you left the employ in 2007?
> A.      Correct.
>                                     . . .
> Q.      So what would you do [as market asset protection manager]?
> A.      I would go from store to store. I would inspect the stores. We called them store tours at the time. I would review the safety files. I would review their compliance files. I would conduct tours of the store with the store manager, the asset protection manager, and the store manager's boss a lot of times would be with us. I did investigations, obviously. I dealt with camera placement. I dealt with construction issues where we were building something. I monitored the grocery side, the food business, which was inventory every month. I dealt with inventory once a year at each store. I dealt with Hazmat compliance. … I had to make sure all the associates were OSHA trained …

Exhibit "D," at 85:16-25, 86:1-23, 88:5-13.

Admittingly, Mr. Peterson has never worked for SAM'S WEST. Although he did work for SAM'S WEST'S parent company, his *curriculum vitae* and his own deposition testimony show *Peterson never worked as a Club manager, never worked as a cart pusher, never drafted or enforced*

*any policies relative to cart handling and, overall, has not worked at Wal-Mart Stores, Inc. in over 13 years*. *Id*. Put simply, Mr. Peterson's opinions relative to any "industry" standard is and are devoid of any **reasonable** or **reliable** scientific or otherwise *informed* methodology, and they are in no way "expert" or even credible.

   **3.   Mr. Peterson Has Been Routinely Disqualified as an Expert by Nevada Courts.**

Finally, Mr. Peterson has been *excluded as an expert on no less than four occasions, including twice by this Court,* and Mr. Peterson even admits that he has not been qualified as an expert during these instances. Most recently, The Honorable Joanna Kishner excluded Mr. Peterson based on his purported "expert" opinions and on his qualifications:

> [H]e doesn't say what [his opinion is] based on [or] whether there's any literature that supports that, [or] whether he reviewed the policies. In fact, he says in his depo the [excerpts] that have been provided to this court that he didn't. Now look at the next paragraph. … **[H]e doesn't say any basis of the industry. In fact, he says in his deposition, you know, giving him the benefit of the doubt, he's saying I'm sure there is literature and text out there that would agree with my findings but then he says he hasn't specifically looked for anything.** So he says that based on his **experience and knowledge** but he **doesn't even say in his report** what his experience and knowledge [is]. … And when he says just as the industry directs to do, he **doesn't tell us anything on how the industry says that, where it is**.
>
> **The defendant more likely than not has procedures and plans for emergency situations such as this case[. I]f they do not, they fall below the standard of care. <u>That's not an opinion. That's not a qualified expert opinion because he's not even saying whether they do or don't</u>.**
>
> If you look at a person who is properly qualified, the district courts should consider the following factors. Former schooling and academic degrees. **I don't see any schooling or academic degrees that relate to these opinions for this case.** Licensure. **No licensure related to these opinions for this case.** Important experience. While he may have been a Wal-Mart employee ten years ago, by him saying that he doesn't even know if it has policies and procedures in place, **I can't see how his three opinions or that he has anything about [] experience[.]** So I can't see him in that regard. Practical experience and specialized training. [] I don't see that he has **applied that training to how it relates to what he's trying to say for these opinions here**.

*Kalaveshi v. Wal-Mart Stores, Inc., et al.*, Case No. A-15-725697-C, Hearing Transcript 117-22 (8th Dist. July 24, 2018) (emphases added), attached as Exhibit "G."

In *Kalaveshi*, Plaintiffs retained Mr. Peterson to opine as to the response of store employees to a fellow employee's medical emergency in deciding whether or not to call 911, and Mr. Peterson proffered opinions regarding the role of the defendant's possible policies and procedures in the scenario and whether these followed the "industry standard," to the extent either existed. *See, generally, id*. However, Judge Kishner <u>excluded</u> Mr. Peterson as a qualified expert <u>*a mere five months before he was deposed in this matter*</u> (i.e., on **July 24, 2018, whereby Peterson was deposed for this case on December 14, 2018**), stating that "he makes these assumptions **without any support**." *Id*. at 122 (emphases added).  In sum, Judge Kishner held:

> [I]t is so ordered that [Defendants'] motion to exclude plaintiff [expert] John Peterson is going to be granted because [] **there's really nothing he can testify to**.  And I don't see how he also assists the trier of fact really is another key point here because **he doesn't say anything other than saying hey, it's common sense**[.]  Well, he doesn't have any basis for saying that they should or should not know something because he doesn't tell us any of that.  So that's where the Court's going with that.

*Kalaveshi*, Hearing Transcript 122-23, attached as Exhibit "G." (emphases added).

Further, Mr. Peterson admits that he has only been retained to offer opinions for three cases that involved non-falling-merchandise incidents whereby a customer was struck by an object on ground level. Those cases included: (1) *Timothy Boytor v. Wal-Mart Stores, Inc.,* A-16-738065-C, June 8, 2016 (Defendant employee struck Plaintiff's cart and body); (2) *Renaud Delgadillo v. Wal-Mart Stores, Inc.*, A-15-719307-C, June 16, 2015 (Defendant employee struck Plaintiff with a shopping cart); and (3) *Tina Athow v. Wal-Mart Stores, Inc.*, A560484, April 7, 2008 (Defendant employee pushed and maneuvered a heavy floor buffing machine and struck a customer's feet and ankles).

Both *Boytor* and *Delgadillo* settled before the Court could decide whether Peterson would qualify as an expert. However, the *Athow* Court was clear and unequivocal: Peterson <u>was excluded</u>. **<u>In Athow,</u> Peterson was precluded from testifying as an expert** for offering nearly identical opinions as he offers in this matter. *See* Expert Report of John Peterson from *Athow v. Wal-Mart Stores, Inc.*,

attached hereto Exhibit "H." Mr. Peterson's lack of qualifications, and his actual exclusion from testifying, are certainly both relevant to the inquiry as to whether Mr. Peterson is, in fact, a qualified and qualifiable "expert." *See Daubert*, 509 U.S. 579; *see, e.g., Knierim v. United States Gov't Dep't of the Navy*, 802 F. Supp. 2d 965, 974 (S.D. IN. 2011), and *Bear v. Ford Motor Co.*, 2007 U.S. Dist. LEXIS 19593 at *8-9 (E.D. WA. 2007).

In fact, Judge Wall concluded in *Athow* that "there isn't an area of expert testimony for which [Mr. Peterson] would be qualified to testify." *See* Transcript of Hearing on Motion to Disqulify in *Athow*, attached as Exhibit "I," at 12:20-22. Judge Wall found that Mr. Peterson: (i) never pursued any education regarding the "industry;" (ii) had only achieved a high school education; (iii) held no degrees, certificates or licensure relative to the issues at hand; (iv) never held any kind of faculty position or done any teaching related to the "industry" or field of retain operation or handling of scrubbing machines; (v) never authored any verified peer-reviewed published works; and (vi) counted positions within Walmart loss prevention as his only relevant work experience. *Id.* As a result, Judge Wall determined that Peterson lacked any of the requisite qualifications required of an expert. Exhibit "I," at 10:10-15. Even Judge Wall could not understand Mr. Peterson's basis for declaring himself an expert when he stated: "I'm not sure what his area of expertise would be. Would it be in Wal-Mart's policies and procedures or in safety in a department store generally?" *Id.* at 10:20-21.

Further, Judge Wall specifically found that each of Mr. Peterson's opinions were "not an area of expertise or the proper subject of expert testimony." *Id.*  Noting that most of Mr. Peterson's opinions in the *Athow* case were merely lay criticisms of Walmart's adherence to its own policies, Judge Wall summarized, "[h]e's been designated as an expert in the issue of safety. He hasn't been designated as an expert in whether Wal-Mart's lying about what their policies and procedures are, and so that's not really an area that he's been designated in or that he's provided sufficient opinion to make his testimony admissible under [NRS 50.275]." *Id.* at 13:12-18.

In sum, Mr. Peterson has attempted to testify as an expert in the past and was found to lack any experience in applying, training, promulgating or even learning about safety standards in the retail industry. Little has changed since that time and Mr. Peterson remains no more qualified to be an expert of the retail industry than any other similarly-tenured Walmart employee.  Mr. Peterson should

be excluded in this matter just as he was excluded in the *Athow* matter.

### 4. Mr. Peterson Has Admitted Before He Has Been Excluded as an Expert by Other Courts.

Further, Mr. Peterson has testified under oath before he has been routinely excluded as an "expert" in the past:

> Q.   Have you ever been excluded as an expert witness before?
> A.   Yes.
> Q.   Do you know when was the last time or –
> A.   The last time would be, I think, last year I was excluded in Missouri at a Buchanan County court for Chesser versus Wal-Mart.
>
> …
>
> It was a case involving a Pepsi vendor who – she made the claim that she was struck by a pallet falling either off a forklift or a steel rack in the back room of a Wal-Mart, and I was hired to give opinion on the protocols Wal-Mart has in place of when an accident actually occurs, what they're supposed to document, how they're supposed to investigate the accident.
>
> Q.   Do you know the reason for the exclusion of your opinions?
> A.   Well, my understanding of it is the judge felt that my testimony was all post accident and had nothing to do with causation of the accident, which admittedly that's not what I was hired to do, and so he didn't feel that my testimony would be beneficial to the case.
> Q.   Have there been any other occasions, to your knowledge, that your opinions have been excluded?
> A.   Yeah.  I was excluded from a lightning-strike case in Utah.  I don't remember the parties' names.  I think it was – it was Boy Scouts was the defendant and a plaintiff's party, but the name escapes me.  In that case I was hired to do risk assessment and risk management involving ongoing issues like lightning strikes, for example, and the judge excluded me.  I'm not sure the reasons why I was excluded in that case, but I guess it had to do with me not running a Boy Scout camp or something to that matter.
> Q.   Any other occasions that you are aware of?
> A.   Well, then I have the last and only time was my very first case, which was Athow versus Wal-Mart.
>
> …
>
> Q.   Where was the case venued?
>
> …
>
> A.   State court.
> Q.   [T]o your knowledge what was the basis for that exclusion?
> A.   … **The judge didn't feel my opinions would aid the trier of fact in their decision making.**

*See* Deposition Transcript of John R. Peterson in *Tina Basharel v. Wal-Mart Stores, Inc.*, attached as Exhibit "J," 10-13 (emphasis added).

Given Mr. Peterson's lack of credibility, inability to provide the bases for his opinions, vast distance from the subject matter of this issue, and track record of disqualification as a purported expert, he must be excluded as an expert from this matter.  Regardless of his opinions, Mr. Peterson is not qualified and has not even taken the time to educate himself with the crux of the instant litigation as to begin to qualify himself. Mr. Peterson's report does not concretely establish any type of familiarity with this case, let alone link the facts of this case to any industry standard applicable to the same in order to formulate his opinions.  Even then, his opinions regarding whether Sam's Club should have had policies and/or procedures in place for a "system" of "spotting" is up to the trier of fact to decide, and whether Sam's Club's policies to use safety straps and/or have one person monitor carts going in and out of the cart bay are not matters that require specialized knowledge, education, or experience for a jury to understand, particularly from one merely holding himself out to be an "expert."  Mr. Peterson, who by no means is an "expert," just by stating he is by working at an airport restaurant company, performing random seminars at or near the airport, and attending hour-long lectures without real application of the knowledge gained, if any (*see, generally,* Exhibit A), is not qualified pursuant to Nev. Rev. Stat. §50.275, *Daubert,* or the Federal Rules of Evidence. Therefore, Mr. Peterson must be excluded.

   **B.      Mr. Peterson's Opinions Do Not Assist The Trier Of Fact As The Factual Debates Of This Case Are Not Issues That Necessitate Expert Testimony.**

Mr. Peterson's testimony will not help the trier of fact in understanding the evidence or determining a fact at issue because it is not the product of any methodology. Mr. Peterson's "expertise" is in "loss prevention," not in the assessment of facts of each individual jury member and each individual's judgment call.  Plaintiff has introduced no evidence to establish that Mr. Peterson's opinions are testable or have been tested, have been published or subject to peer review, are generally accepted in the relevant community, or are based more on particularized facts rather than assumption, conjecture, or generalization. As such, Mr. Peterson lacks any basis to establish the reliability of his opinions.

While Mr. Peterson's work history and accreditations *may* carry with them some weight in other fields, he does not offer in his "expert" report any type of application of a scientific test or reliable methodology on which to base his opinions. *See, generally*, Exhibit "B." Instead, Mr. Peterson merely describes an ideal "system" of protocols and procedures, without even verifying if the subject Sam's Club even had such a "system" in place, all the while referring to his former employee (Wal-Mart Stores, Inc.) from *13 years ago*, <u>instead</u> of SAM'S WEST, who is the actual retailer at issue in this case. If Mr. Peterson had even *been* to the subject Club, he would realize that the two retailers are, in fact, quite different from one another. This is yet another reason that Mr. Peterson is in no way qualified to proffer expert opinions in this matter.

**C.**   **<u>Mr. Peterson's "Expert" Report Does Not Assist The Trier Of Fact Because It Does Not Offer Any Scientifically Reliable Basis For The Actual Incident.</u>**

In Mr. Peterson's "expert" report, he does not actually apply any knowledge to the *instant* matter.   Rather, Mr. Peterson speaks as to ancillary matters, including "Sam's Club's Narrative," which is that "Defendant has denied financial responsibility for the claim being made."  Exhibit "B," at 6.  Mr. Peterson continues, comparing to the use of "spotters" to that of driving a vehicle:

> "If you are driving down a road with curves, speed is a critical factor. The drier should know to slow down depending on the angle of the curve ahead. Slowing down provides the driver with enough control to drive the curve safely. There are historical trends and data that let all of us who drive know that if we take a corner too fast, we will likely lose control and crash. Sam thing here in a store. . . . Last point – when one takes a curve too fast and crashes, one does not get to say, they are not at fault."

*Id*. at 10.

As this Court is aware, the action of a Club employee is *nothing* like a driver operating a vehicle. In sum, Peterson's opinions compare legal apples to oranges and confuse more than they assist a jury. By stating his opinions and supposed "facts," Mr. Peterson does not assist the trier of fact; in contrast, Mr. Peterson appears to create *more questions* for the jury. He presents "opinions" that confuse the trier of fact by convoluting the true issues and positing scenarios that are so tangential from the actual litigated matter that the layperson will begin to lose sight of what he or she is meant to decide in this case. Of what relevance is a driver rounding a curve *at a high rate of speed* have to

Plaintiff's alleged incident involving a *low-speed/low-impact* shopping cart matter? What does "industry" refer to? Mr. Peterson creates more questions for the jury, which is *not* the role of the expert witness.

Mr. Peterson's reasoning and conclusions are <u>*excessively flawed*</u> in that they not only fail to address actual, proven methods or tests that support his conclusions, but they also <u>*do not even apply to the situation at hand*</u>. Mr. Peterson speaks of these ancillary issues when this matter is about Tu's handling of a shopping cart in the vestibule of the subject Sam's Club. Mr. Peterson's flawed reasoning, confused and confusing testimony, and errored report all lend to the conclusion that he must be excluded as an expert in this matter.

## III.    LEGAL ARGUMENT AND AUTHORITIES

### A.    <u>The Standard of Admissibility</u>

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), paved the way for the standard of admissibility of expert opinions. Pursuant to *Daubert*, upon objection to proffered expert testimony, a trial court must conduct a preliminary assessment of whether the reasoning or methodology of the testimony is scientifically reliable and valid and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 590, 593. Once the party opposing the proffered expert testimony asserts an objection, the proffering party bears the burden of demonstrating its ability by a preponderance of the evidence. *Id*. at 593, n. 10.

The trial court is charged with the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id*. at 597. As a gatekeeper, the trial court must independently determine the qualifications of an expert, whether there is objective support for an expert's theory, and verify that the expert's opinion is not based on mere possibility, speculation, or surmise. *Id*. The U.S. Supreme Court provided the basis for its landmark decision regarding expert testimony:

> The subject of an expert's testimony must be scientific knowledge. The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. The term "applies to any body of known facts or to any body of ideas inferred from such facts or

1
2
3
4
5
6

accepted as truth on good grounds." Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science. But, in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. **Proposed testimony must be supported by appropriate validation—*i.e.*, "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.**

7   *Daubert*, 509 U.S. at 589-90 (internal citations and quotations omitted) (emphasis added).

8   The purpose of the U.S. Supreme Court's statements above are to explain that an expert's

9   testimony must be based on reliable expertise. *Id.* It is not a requirement that the methodology is

10  infallible; rather, the knowledge must be accepted in the field as appropriate and applicable. In other

11  words, the expert's testimony must be reliable and relevant. *Id.*

12  The trial court is charged with the "task of ensuring that an expert's testimony both rests on a

13  reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. As a gatekeeper, the

14  trial court must independently determine the qualifications of an expert, whether there is objective

15  support for an expert's theory and verify that the expert's opinion is not based on mere possibility,

16  speculation or surmise. *Id.* In making its preliminary assessment of admissibility under Rule 702, the

17  Court looks at certain factors which help determine whether the expert testimony possesses sufficient

18  indicia of scientific validity and applicability, including: (i) whether the scientific theory or technique

19  has been tested or can be reliably tested; (ii) whether it has been subjected to peer review and

20  publication; (iii) what the known or potential rate of error is; and (iv) whether it is generally accepted

21  in the community. *Id.* at 593-94. "The inquiry envisioned by Rule 702 is…a flexible one. Its

22  overarching subject is the scientific validity and thus the evidentiary relevance and reliability of the

23  principles that underlie a proposed submission." *Id.* at 594-95. More recently, the U.S. Supreme Court

24  has expanded upon this by holding that *all* expert testimony - not just scientific expert testimony -

25  must be shown to be reliable before it is admitted. *Kumho Tire Co v. Carmichael*, 526 U.S. 137, 147,

26  119 S.Ct. 1167, 1174 (1999).

27  Here, it is apparent from even a cursory review of Mr. Peterson's *curriculum vitae*, "Expert

28  Report," and deposition testimony that his opinions meet *none* of the criteria required under *Daubert*.

*See, generally,* Exhibit "B," "C," and "D." Mr. Peterson bases his opinions on obvious biases and baseless (and unacknowledged) assumptions, a superficial and uncritical review of the evidence in this matter, and his review of SAM'S WEST's policies and procedures via its responses to various sets of written discovery. Exhibit "B," at 5. It is axiomatic that Mr. Peterson's repeated references to *Sam's West's policies and procedures* are improper as a source of an *industry standard of care* applicable in 2009. *Otey v. Dick's Sporting Goods, Inc.*, 2008 U.S. Dist. LEXIS 32106 at **8-9 (W.D. Va. 2008) (holding that the question of whether conduct was negligent must be determined by the standard(s) fixed by law *without regard to any internal policies of the defendant*); *see also Rhodes v. Illinois C. Gulf R.R.*, 665 N.E.2d 1260, 1272-73 (Ill. 1996) (holding that whether a legal duty exists is a question of law, and the extent of such a legal duty *cannot be created by a defendant's internal rules*).

Clearly, nothing has changed with regard to Mr. Peterson's lack of expertise since Judge Wall found, in a factually similar matter:

> Mr. Peterson is not qualified to render an opinion regarding the proper standard of care in this case. ***Mr. Peterson's opinion of what Wal-Mart's standard of care might be does not create a standard of care***. In addition, Mr. Peterson's deposition testimony established that ***[Mr. Peterson] does not understand the meaning of the phrase "standard of care.***"

> Exhibit "H," at 2: 21-27 (emphasis added).

Mr. Peterson's confusion of his own opinions is demonstrated throughout his report, but none more poignantly than when he states: "Sam's Club violates the principle of customer safety being a top priority. The subsequent failure to treat risks during an activity that was occurring under their charge obviously violated the principle of customer safety being the priority." Exhibit "B," at 14 (emphasis added). As this one example among many makes crystal clear, Mr. Peterson's testimony, far from assisting the jury in understanding any material facts, would serve only to *distract* from, and *confuse*, the actual issues underlying this matter.  Indeed, Mr. Peterson's deposition testimony seems to confuse Mr. Peterson himself. Therefore, Mr. Peterson *must not be allowed to muddy the waters of trial with his incompetent, baseless, contradictory, and bewildering lay opinions masquerading as expertise*.

. . .

### B. **This Court Must Exclude Unreliable Testimony of an Expert Witness**

For scientific, technical, or other specialized knowledge to assist the trier of fact to understand the evidence, it must be reliable. *Daubert*, 509 U.S. at 589-90 (holding that the trial court should exclude the testimony of an expert whose testimony is not reliable); *Kumho Tire*, 526 U.S. at 149. Further, Plaintiff must prove reliability by a preponderance of the evidence. *See Daubert*, 509 U.S. at 590. An expert witness may be qualified and highly credible, but his conclusions may be based on unreliable methodology. *Id.* Scientific evidence that is not grounded "in methods and procedures of science" is no more than "subjective belief or unsupported speculation." *See Daubert*, 509 U.S. at 590.

For an expert's testimony to be reliable, the following requirements must be met: (1) the expert's testimony must be based on sufficient facts or data, (2) the expert's testimony must be the product of reliable principles and methods, and (3) the expert must apply the principles and methods reliably to the facts of the case. *Daubert*, 509 U.S. at 579; *Kumho Tire Co.*, 526 U.S. at 137. An expert's testimony is unreliable even when the underlying data are sound if the expert draws conclusions from that data based on flawed methodology. *Daubert*, 509 U.S. at 579. Evidentiary reliability is demonstrated by a showing that the knowledge offered is more than speculative belief or unsupported speculation. *Id.* at 590. While certainty is not required, the knowledge asserted must be based on good scientific grounds. *Id.* Further, there must be a connection between the testimony offered and validation of the opinion so that it may be determined whether there are "good grounds" for the expert's opinion. *Id.*

In the present matter, Mr. Peterson's opinions amount to an assertion, based upon unsupported speculation, that SAM'S WEST fell below the mysterious "industry's" standard of care by failing to adhere to its own policies and procedures, by failing to create a "system" to prioritize customer safety and by failing to investigate, let alone collect more evidence regarding shopping cart incidents. Mr. Peterson's report and deposition testimony fail to connect any reliable methods for detailing how or when Walmart fell below the standard(s) of care, or even what that standard of care might have been at the time of the subject-incident.

. . .

. . .

**C.      This Court Has Never Qualified Peterson as an Expert at Trial.**

Mr. Peterson has never been admitted in front of this Court to testify as an expert. Further, this Court has already held his opinions are more confusing for a jury than helpful.  *See Urban McConnell v. Wal-Mart Stores, Inc.,* Case No. 2:12-cv-01601-RCJ-PAL, ECF 52 (Feb. 5, 2014). In *McConnell*, Peterson was offered as an expert in the area of standard of care. The Court quickly made note that, like here, his "expertise is better described as loss prevention." *Id.* In doing so, the Court made clear that this "opinions" would be more confusing than helpful to the jury:

> The Court will of course instruct the jury on the standard of care, and it is for the jury to consider whether Defendant acted reasonably. Only if the case concerned a heightened, particularized standard of care, such as in a professional malpractice case, would expert testimony as to the standard of care be more helpful than confusing to the jury. Only in such cases does a jury require expert testimony as to what constitutes reasonable behavior. A layman may evaluate reasonable behavior in the context of every day events, such as mopping a floor in a retail store, without resort to expert assistance.

*See Urban McConnell v. Wal-Mart Stores, Inc.,* Case No. 2:12-cv-01601-RCJ-PAL, ECF 52 at 3-16.

Mr. Peterson remains no more qualified to be an expert of the retail industry than any other similarly tenured SAM'S WEST employee from 13 years ago, except that a Sam's Club employee may be more qualified since Mr. Peterson never actually worked at Sam's Club, only Walmart.  Mr. Peterson must be excluded in this matter.

**D.      Mr. Peterson Has Routinely Been Excluded In the Eighth Judicial District Court.**

Not once, but *twice*, Mr. Peterson has been ***excluded by the Eighth Judicial District Court, in and for Clark County, Nevada, as an expert***.  *See Kalaveshi v. Wal-Mart Stores, Inc.*, Case No. A-15-725697-C; *see also Athow v. Wal-Mart Stores, Inc.*, Case No. A560484. As discussed *supra* (*see* II(A)(4)-(5)), in *Kalaveshi*, Judge Kishner homed in on Mr. Peterson's lack of reliability and relevance in his "expert" opinions, and she excluded him as a witness prior to trial.  *see also, generally*, Exhibit "G."

> [Defendants'] motion to exclude [] John Peterson is going to be granted because [] **there's really nothing he can testify to**.  And **I don't see how**

**he also assists the trier of fact** really is another key point here because he doesn't say anything other than saying hey, it's common sense[.]  Well, he doesn't have any basis for saying that they should or should not know something because he doesn't tell us any of that.

Exhibit "G," (emphases added).

## IV.    CONCLUSION

John Peterson is a lay, self-proclaimed "retail liability expert" and not an actual expert in the realm of retail safety. John Peterson's "expert" report does not contain evidence of utilization of some type of reliable testing or methodology. It is a fact that John Peterson relied on lay deposition testimony and his memory from 13 years ago from a similar retail establishment to formulate an "expert" opinion. John Peterson merely skimmed SAM'S WEST'S policies and procedures in this matter and formulated his "expert" opinion on whether, through sheer speculation, they were not adhered to in this matter. Peterson did not point to any industry specific standards upon which to base his opinions. In fact, Peterson only refers to the "service industry," in general, when providing a basis for his opinions.  It is a fact that John Peterson has been excluded as an expert *many times, of which includes by this very Court*.

John Peterson's unrelated and unfounded conclusions will not assist the trier of fact in this case. Plaintiff merely attempts to create a more favorable scenario for herself to bolster the opinion that Defendant was negligent by presenting before the jury a critic of SAM'S WEST. However, Mr. Peterson only serves to confuse the jury with his speculation and assumption regarding what Sam's Club "should have done" based on his workplace experience from over a decade ago and his reference to a few pages in a book for engineering design. His "expert" opinions are not based on any type of reliable methodologies, and they certainly do not present any type of relevant information that would help the jury to understand some sort of higher level of knowledge.

. . .

. . .

. . .

. . .

. . .

Accordingly, based on these facts and the attached deposition testimony, "expert" report, *curriculum vitae*, and other exhibits, Defendant respectfully requests this Court exclude John Peterson as an expert in this litigation, including all of his related materials.

DATED this 1st day of September 2021.

**PHILLIPS, SPALLAS & ANGSTADT LLC**

_____

ROBERT K. PHILLIPS, ESQ.
Nevada Bar No. 11441
TIMOTHY D. KUHLS, ESQ.
Nevada Bar No. 13362
504 South Ninth Street
Las Vegas, Nevada 89101

*Attorneys for Defendant*
*Sam's West, Inc.*

**DECLARATION OF TIMOTHY D. KUHLS, ESQ. IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S DESIGNATED "SAFETY EXPERT" JOHN R. PETERSON**

STATE OF NEVADA     )
                             ) ss.
COUNTY OF CLARK     )

I, Timothy D. Kuhls, being first duly sworn, upon penalty and perjury, depose and state as follows:

1. I am an attorney with the law firm PHILLIPS, SPALLAS & ANGSTADT LLC, counsel of record for Defendant in the above-captioned case.

2. I have personal knowledge of and am competent to testify as to the matters set forth in this document and make this declaration in support of the attached motions.

3. On Friday August 27, 2021, Plaintiff's Counsel, Jennifer Arledge, Esq., and I had a telephonic LR 16-3(a) Meet and Confer regarding proposed motions *in limine* and evidentiary stipulations. I do not believe the current motion constitutes the standard pre-trial motion *in limine* worthy of inclusion in an omnibus motion per the Court's instruction. Regardless, out of an abundance of caution, I called Ms. Arledge on Tuesday, August 31, 2021, to inform her of my intention to file said motion. Ms. Arledge informed me that she would not agree to stipulating via email to said motion and thus, the parties aver they have met the LR 16-3(a) requirements in case the Court deems said motion a pre-trial motion *in limine*.

4. While the parties were able to come to resolutions regarding some of the evidentiary issues, the following motion remains in dispute.

5. I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

DATED this 1st day of September 2021.

_____
TIMOTHY D. KUHLS, ESQ.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1<u>st</u> day of September 2021, I served a true and correct copy of the foregoing, **DEFENDANT SAM'S WEST, INC.'S MOTION TO EXCLUDE PLAINTIFF'S DESIGNATED "SAFETY EXPERT" JOHN R. PETERSON**, as follows:

☐ By facsimile addressed to the following counsel of record, at the address listed below:

☒ By placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada;

☐ By Hand Delivery (ROC); and/or

☒ By Electronic Filing/Service Notification to:

| ATTORNEY OF RECORD | TELEPHONE/FAX | PARTY |
|---|---|---|
| ANTHONY P. SGRO, ESQ.<br>Nevada Bar No. 3811<br>JENNIFER WILLIS ARLEDGE, ESQ.<br>Nevada Bar No. 8729<br>SGRO & ROGER<br>720 S. 7th Street, Third Floor<br>Las Vegas, Nevada 89101 | Phone 702-384-9800<br>Fax    702-665-4120 | Plaintiff |

*/s/ Joshua J. Kephart*

_____

An Employee of PHILLIPS, SPALLAS & ANGSTADT LLC