1
2
3
4
5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

6   DONNA CARLSON,                                    Case No. 2:17-cv-02882-MMD-EJY

7                            Plaintiff,                ORDER

         v.

8   SAM'S WEST, INC. dba SAM'S CLUB,

9                            Defendant.

10

11   **I.    SUMMARY**

12          Plaintiff Donna Carlson brings this negligence action against Defendant Sam's

13   West, Inc., for injuries she claims she sustained after being struck from behind by a row

14   of shopping carts. (ECF No. 1-1.) Before the Court are Plaintiff and Defendant's

15   consolidated motions in limine.[1] (ECF Nos. 122 ("Plaintiff's Motion"), 123.) Also before

16   the Court is Defendant's motion to strike Plaintiff's expert witness, John Petersen.[2] (ECF

17   No. 124.) Because the Court construes Defendant's motion to strike as a motion in limine,

18   the Court will examine them together. (ECF Nos. 123, 124 (collectively "Defendant's

19   Motion").)

20   **II.   BACKGROUND**

21          On around October 28, 2015, Plaintiff was taking a shopping cart from the vestibule

22   in front of a Sam's Club store in Las Vegas. (ECF No. 122 at 4.) While she was looking

23   in her purse for her Sam's Club card, a Sam's Club employee struck her from behind with

24   a row of shopping carts. (*Id.*) Plaintiff had recently had surgery on her neck and was afraid

25

26          [1]Both parties filed responses (ECF Nos. 126, 127) and replies (ECF Nos. 129,
27   130). However, pursuant to Local Rule 16-3(a), replies are allowed only with leave of the
     Court. As neither party sought leave, the Court will strike both replies.

28          [2]Plaintiff responded (ECF No. 128) and Defendant replied (ECF No. 132). The
     Court construes Defendant's motion to strike Peterson's testimony as a motion in limine,
     and will strike the reply under LR 16-3(a).

1   that falling to the ground would injure her spine. (*Id.*) She grabbed the handlebars of the

2   shopping cart in front of her to stop her fall. (*Id.*) Plaintiff asserts that this motion placed

3   severe strain on her left shoulder and caused her left rotator cuff to tear. (*Id.* at 4-5.) She

4   also claims that the impact caused extensive bruising and a bone chip. (*Id.* at 5.) Although

5   her treating physician removed the bone chip, she claims she continued to suffer pain.

6   (*Id.*) She underwent a spinal fusion surgery to alleviate the continued back pain. (*Id.*)

7   **III.    LEGAL STANDARD**

8           A motion in limine is a procedural mechanism to limit testimony or evidence in a

9   particular area in advance of trial. *See U.S. v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir.

10  2009). It is a preliminary motion whose outcome lies entirely within the discretion of the

11  Court. *See Luce v. U.S.*, 469 U.S. 38, 41-42 (1984). To exclude evidence on a motion in

12  limine, the evidence must be "inadmissible on all potential grounds." *See, e.g., Ind. Ins.*

13  *Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence

14  meets this high standard, evidentiary rulings should be deferred until trial so that

15  questions of foundation, relevancy and potential prejudice may be resolved in proper

16  context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill.

17  1993). This is because although rulings on motions in limine may save "time, cost, effort

18  and preparation, a court is almost always better situated during the actual trial to assess

19  the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D.

20  Kan. 2007).

21          In limine rulings are provisional. Such "rulings are not binding on the trial judge . .

22  . [who] may always change h[er] mind during the course of a trial." *Ohler v. U.S.*, 529 U.S.

23  753, 758 n.3 (2000). "Denial of a motion in limine does not necessarily mean that all

24  evidence contemplated by the motion will be admitted at trial." *Ind. Ins. Co.*, 326 F. Supp.

25  2d at 846. "Denial merely means that without the context of trial, the court is unable to

26  determine whether the evidence in question should be excluded." *Id.*

27          Evidence is relevant if "it has any tendency to make a fact more or less probable

28  than it would be without the evidence" and "the fact is of consequence in determining the

1  action." Fed. R. Evid. 401. Only relevant evidence is admissible. *See* Fed. R. Evid. 402.
2  Relevant evidence may still be inadmissible "if its probative value is substantially
3  outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury,
4  undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid.
5  403. "Unfairly prejudicial" evidence is that which has "an undue tendency to suggest
6  decision on an improper basis, commonly, though not necessarily, an emotional one."
7  *U.S. v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (quoting *Old Chief v. U.S.*,
8  519 U.S. 172, 180 (1997)).

9  **IV.   DISCUSSION**

10  The Court first addresses the parties' motions to exclude certain expert testimony,
11  then addresses Defendant's other sundry motions in limine.

12  **A.   Motions to Exclude Expert Testimony**

13  Plaintiff's Motion seeks to limit or exclude the testimony of four expert witnesses
14  proffered by Defendant. Defendant likewise moves to limit or exclude the testimony of an
15  expert witness proffered by Plaintiff. The Court will review the objections to each expert
16  in turn.

17  **1.   *Daubert* Standard**

18  Federal Rule of Evidence 702 permits a "witness who is qualified as an expert by
19  knowledge, skill, experience, training, or education [to] testify in the form of an opinion or
20  otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help
21  the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony
22  is based on sufficient facts or data; (c) the testimony is the product of reliable principles
23  and methods; and (d) the expert has reliably applied the principles and methods to the
24  facts of the case."

25  The Supreme Court provided additional guidance on Rule 702 and its application
26  in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire*
27  *Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *Daubert* focused on scientific testimony and
28  *Kumho Tire* clarified that *Daubert*'s principles also apply to technical and specialized

3

1  knowledge. *See Kumho*, 526 U.S. at 141, 147-49. "Scientific evidence is reliable 'if the
2  principles and methodology used by an expert are grounding in the methods of science.'"
3  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (internal citations
4  omitted). The trial court has "considerable leeway" in deciding how to determine the
5  reliability of an expert's testimony and whether the testimony is in fact reliable. *See*
6  *Kumho*, 526 U.S. at 152. The "test of reliability is 'flexible,' and *Daubert*'s list of specific
7  factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at
8  141.

9       The Ninth Circuit has emphasized that "Rule 702 is applied consistent with the
10  liberal thrust of the Federal Rules and their general approach of relaxing the traditional
11  barriers to opinion testimony." *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993,
12  1004 (9th Cir. 2001), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001)
13  (citations omitted). "An expert witness—unlike other witnesses—is permitted wide latitude
14  to offer opinions, including those that are not based on firsthand knowledge or
15  observation, so long as the expert's opinion [has] a reliable basis in the knowledge and
16  experience of his discipline." *Id.* (citations and quotation marks omitted). Shaky but
17  admissible evidence should be attacked by cross examination, contrary evidence, and
18  attention to the burden of proof, rather than excluded. *See Primiano v. Cook*, 598 F.3d
19  558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010)

20       **2.       Plaintiff's Motion (ECF No. 122)**

21            **a.       Steven McIntire, MD**

22       Plaintiff objects to the expert testimony of Steven McIntire, MD, on the grounds
23  that he lacks the qualifications to give expert testimony and that his report lacks
24  foundation. (ECF No. 122 at 6.) Because the Court agrees that McIntire's report lacks
25  foundation, the Court will grant Plaintiff's Motion as to McIntire's testimony; however, if
26  Defendant believes that McIntire's deposition testimony was incomplete, the Court will
27  grant Defendant leave to request a hearing to establish the requisite foundation for
28  McIntire's opinions.

The Court is not persuaded that McIntire is not qualified to give expert testimony on whether Plaintiff required surgery. Indeed, other judges in this District have rejected Plaintiff's argument and found that McIntire was qualified to testify on whether surgeries were necessary, despite that he is a generalist. *See, e.g.*, *Stedeford v. Wal-mart Stores, Inc.*, No. 2:14-cv-01429-JAD-PAL, 2016 WL 3844211, at *2 (D. Nev. Jul. 15, 2016). The Court agrees that McIntire's "knowledge, skill, experience, training, [and] education" supports finding that he is qualified to give his expert opinion on whether Plaintiff's surgery was necessary.

However, the Court agrees that McIntire's opinion lacks foundation. In his report, McIntire concluded that "[t]he provided records do not adequately substantiate the development of a lumbar radiculopathy from this injury or a need for lumbar surgery. The claimant likely sustained a lumbar strain. Reasonable treatment would have consisted of analgesics and PT for 4-6 weeks." (ECF No. 122-2 at 29.) McIntire explained that his conclusions "have been made to a reasonable degree of medical probability and are based on [his] examination and review of those records provided to me." (*Id.*) Yet at his deposition, McIntire testified he does not refer to clinical practice guidelines when determining whether lumbar surgery is necessary and was unable to state what authoritative guidance in the area was. (*Id.* at 9.) Instead, McIntire testified that he "know[s] the literature well enough" to know whether surgery is or is not necessary. (*Id.*) The Court finds this is insufficient to confirm that McIntire's opinion is "the product of reliable principles and methods," Fed. R. Evid. 702(c), as no principles or methods were described. Accordingly, the Court will grant Plaintiff's Motion as to McIntire's testimony, and will preclude him from testifying unless he can establish that the methodology supporting his opinion is grounded in reliable medical principles.

### b.   Steven T. Woolson, MD

Plaintiff likewise objects to the expert testimony of Steven T. Woolson, MD, on the grounds that he lacks the qualifications necessary to give testimony about shoulder injury causation. (ECF No. 122 at 10.) Plaintiff further requests that Woolson be limited to

1    testifying about the matters in his report, and precluded from testifying about Plaintiff's
2    lumbar injury as he did not review those records. (*Id.*) The Court finds that Woolson is
3    qualified to offer expert testimony about Plaintiff's shoulder injury. Woolson is a board-
4    certified orthopedic surgeon who has been practicing for over 45 years, and is currently
5    a full-time member of Stanford University's Department of Orthopedic Surgery. (ECF No.
6    122-9 at 101-104.) That he is not a shoulder specialist and that he refers patients to other
7    surgeons for shoulder surgery go to the weight of testimony, not to its admissibility, and
8    is better left to development on cross-examination. *See Primiano*, 598 F.3d at 564.
9    Finally, Defendant does not dispute that any expert specifically retained to provide expert
10   testimony in a case must disclose "a *complete* statement of all opinions the witness will
11   express and the reasons for them." *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (emphasis added).
12   Because Woolson's disclosure included opinions limited to Plaintiff's shoulder testimony,
13   that will be remain the scope of his testimony. Plaintiff's Motion as to Woolson is therefore
14   denied.

15                          **c.     Steven E. Hake, MD**

16          Plaintiff also objects to the expert testimony of Steven E. Hake, MD, on the grounds
17   that his report lacked adequate foundation. (ECF No. 122 at 11.) Plaintiff argues that Hake
18   only reviewed some of Plaintiff's images and stated his findings, without establishing his
19   reasoning or why he reached the conclusions in the report. (*Id.*) The Court disagrees, and
20   will deny Plaintiff's Motion as to Hake's testimony. Hake is a radiologist, whose job is to
21   review and interpret radiology imaging. Unlike McIntire, who concluded that Plaintiff's
22   medical treatment was unnecessary and failed to provide the reasoning for that
23   conclusion, Hake's interpretation of the images is his reasoning. Plaintiff does not argue
24   that Hake is not qualified to interpret radiology images, nor that he failed to review the
25   relevant images. Moreover, Plaintiff elected not to depose Hake, sacrificing the
26   opportunity to ask any clarifying questions about Hake's interpretations of Plaintiff's x-
27   rays and MRIs. Accordingly, the Court declines to find that Hake's report lacks foundation.
28

1    For the same reasons explained above, Hake's testimony is necessarily limited to

2  the opinions offered in his report, as he is an expert witness retained solely for the purpose

3  of testifying as such. Accordingly, Plaintiff's Motion as to Hake is denied.

4                    **d.      Tamara G. Rockholt, RN, BSN**

5    Plaintiff objects to the expert testimony of Tamara G. Rockholt, RN, BSN, on the

6  grounds that she lacks the requisite qualifications to give opinion testimony on medical

7  billing standards. (ECF No. 122 at 12.) Specifically, Plaintiff argues that Rockholt does

8  not hold any professional certification, nor does she follow any particular continuing

9  education program. (*Id.*) The Court disagrees that Rockholt can only be qualified as an

10 expert in medical billing and normal billing rates if she completes a formal program.

11 Defendant has established that Rockholt has extensive experience in medical billing, and

12 that Rockholt attends and contributes to conferences to stay abreast of national and local

13 standards. Furthermore, Rockholt has explained not only that she uses the FAIR system,

14 but also that she selected the 85th percentile in her analysis. Rockholt's experience would

15 be helpful to the jury in understanding the normal rate of medical billing, and if Plaintiff

16 wishes to challenge Rockholt's decision to use the 85th percentile as her metric, she is

17 free to do so on cross-examination.

18    Plaintiff requests that Rockholt's testimony be limited to her opinions as contained

19 in her reports, and that she be precluded from testifying about the reasonableness of

20 Plaintiff's surgery with Dr. Kaplan. (ECF No. 122 at 12.) As explained above, expert

21 testimony is limited to matters included in the expert's disclosure. Furthermore, Defendant

22 states it does not intend to use Rockholt as an expert on causation, only as an expert on

23 medical billing rates. The Court therefore denies Plaintiff's Motion as to Rockholt.

24                    **3.      Defendant's Motion (ECF No. 124)**

25    Defendant seeks to strike Plaintiff's expert John Peterson on the grounds that he

26 is not qualified and that his testimony is not supported by reliable methodology and would

27 not assist the jury in understanding evidence or determining any facts at issue. (ECF No.

28 124 at 2.) Although Peterson has extensive personal experience as a safety officer for

1   large retail stores, the Court agrees that it is not clear his experience would assist the jury

2   on any relevant question of fact. The opinions in Peterson's report are not scientific or

3   highly technical, and his conclusions are those about which a reasonable jury would not

4   have difficulty forming their own opinions. Furthermore, the lack of explained methodology

5   for forming his opinions or external principles on which his conclusions could be

6   questioned gives the Court pause as to whether Peterson's testimony is sufficiently

7   reliable. Accordingly, the Court will grant Defendant's Motion as to Peterson.

8           **B.     Defendant's Other Motions in Limine (ECF Nos. 123)**

9           Apart from its objection to Peterson's testimony, Defendant raises four additional

10   issues for pretrial resolution. Three objections are to allegedly prejudicial references

11   Plaintiff may make and the fourth concerns the ability to preview demonstrative evidence

12   before it is shown to the jury. The Court addresses each in turn.

13                  **1.     Similar Incidents**

14           Defendant asks the Court to prohibit Plaintiff from "in any manner suggesting to

15   the jury that Walmart [sic] has had similar instances whereby patrons have been injured

16   by an Associate's handling of shopping carts in the past." (ECF No. 123 at 3.) The Court

17   disagrees that any reference to other customers sustaining cart-related injuries at the

18   same store is "wholly irrelevant," or that it would necessarily be confusing or more

19   prejudicial than probative. These issues are likely situation-specific and the Court is

20   unwilling to exclude evidence without knowing what it is on the assumption that it will be

21   more prejudicial than probative. Furthermore, Defendant's suggestion that employer's

22   non-adherence to their own policies is "simply not relevant" overstates this Court's

23   precedent. (ECF No. 123 at 4.) In fact, this Court found in *McConnell v. Wal-Mart Stores,*

24   *Inc.*, 995 F. Supp. 2d 1164, 1169 (D. Nev. 2014), that expert testimony was not necessary

25   for the jury to evaluate whether Defendant breached the standard of care, not that an

26   employer's policies were "irrelevant" as to the question of negligence. The Court therefore

27   denies Defendant's Motion without prejudice and with leave to renew the objection at trial.

28   ///

### 2.   Company Policies

Defendant next asks the Court to prohibit Plaintiff from referring to Defendant's own safety policies. Defendant again unpersuasively invokes *McConnell*. As explained above, *McConnell* did not find that evidence of an employer's safety policies was irrelevant to the question of whether the employer was negligence, only that it alone was not sufficient to prove negligence. *See McConnell*, 955 F. Supp. 2d at 1176. While evidence of an employer's policy may not be substituted for the common law standard of care, a reasonable juror may indeed find it probative in their inquiry. Accordingly, the Court denies Defendant's Motion as to references to its own policies.

### 3.   Reference to Defendant as "Frequent Litigator"

Defendant next asks the Court to prohibit Plaintiff from reference to Defendant or Walmart as a "frequent litigator" or one which has an extensive "past litigation history." (ECF No. 123 at 6.) Plaintiff states that she does not intend to refer to Defendant as a frequent litigator. The Court accordingly denies Defendant's Motion on this question as moot.[3]

### 4.   Demonstrative Evidence

Defendant seeks to preclude the introduction of demonstrative evidence without an opportunity for inspection and review before it is shown to the Court or the jury. (ECF No. 123 at 7.) Demonstrative evidence includes photographs, statements, notes, records, videotapes, models, power point presentations, and examples of medical devices. (*Id.*)

Both parties are ordered to share any demonstrative evidence, including power point presentations, with each other prior to showing to the jury. Any demonstrative evidence to be used in openings or closings to which the parties have not stipulated to must be shared no later than 4 p.m. the business day before trial begins. This will permit the Court to resolve any foreseeable objections outside the presence of the jury without undue delay.

---

[3]The parties certify that they did meet and confer. Presumably, whether Plaintiff intended to refer to Defendant as a frequent litigator would have been discussed before Defendant filed its Motion, avoiding the need for the Court to rule.

1

**V.      CONCLUSION**

2        The Court notes that the parties made several arguments and cited to several

3   cases not discussed above. The Court has reviewed these arguments and cases and

4   determines that they do not warrant discussion as they do not affect the outcome of the

5   motions before the Court.

6        It is therefore ordered that Plaintiff's motion in limine (ECF No. 122) is granted in

7   part and denied in part, as specified herein.

8        It is further ordered that Defendant's motion in limine (ECF No. 123) is granted in

9   part and denied in part, as specified herein.

10       It is further ordered that Defendant's motion to strike (ECF No. 124) is granted.

11       It is further ordered that Plaintiff and Defendant's replies (ECF No. 129, 130, 132)

12  are stricken.

13       DATED THIS 11th Day of February 2022.

14

15

16  MIRANDA M. DU
    CHIEF UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

10